THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ASHBEL
P. FITCH, as Comptroller of the City of New York, Appellant.

*Pauper insane — tax for the maintenance of — chap. 565 of 1893 applies to New
York county — intent of chap. 126 of 1890 — interest upon taxes in arrears.*

Chapter 565 of the Laws of 1893, which provides that "there shall be imposed for
the fiscal year beginning on the 1st day of October, 1893, *on each dollar of tax-
able real and personal property of this State,* for the care, medical treatment,
maintenance and transportation of the insane poor to State hospitals, the pay-
ment of officers' salaries, the payment of employees' wages, and ordinary and
incidental repairs in State hospitals, a tax of one-third of a mill, to be assessed,
levied and collected by the annual assessment and collection of taxes for that
year, *and paid by the several county treasurers* into the treasury of this State, to
be held by the Treasurer for application to the purposes herein specified," can-
not be construed in such a manner as to exempt the taxable property situated
in the city and county of New York from taxation thereunder.

The language of the act is not obscure, and it plainly imposes a tax on all the
property of the State, making no exception in favor of any portion thereof, and
does not, by reason of the said act of 1893 being an amendment of chapter 214 of
the Laws of 1893, entitled an act to appropriate money for the care, etc., of the
insane poor, under the provisions of chapter 126 of the Laws of 1890 (the act
of 1890 not being applicable to the city and county of New York), fall within
the rule that, in the construction of a statute, acts in *pari materia* may be
referred to to ascertain the intent.

*Semble,* that the provisions of chapter 126 of the Laws of 1890 do not indicate an
intention on the part of the Legislature that, in raising funds for the care of the
pauper and indigent insane, the taxable real and personal property situated in
the city and county of New York should be exempt from future taxation.

Interest should be charged against a county upon the balance of taxes due the
State at the expiration of thirty days from the first day of May.

APPEAL by Ashbel P. Fitch, as comptroller of the city of New
York, from a judgment of the Supreme Court in favor of the
plaintiff, entered in the office of the clerk of the county of Albany
on the 29th day of December, 1894, upon the verdict of a jury
rendered by direction of the court after a trial at the Albany County
Circuit directing that a peremptory writ of mandamus issue; also
from so much of a final order of the Supreme Court, made
at the Albany Circuit and entered in the office of the clerk of the
county of Albany on the 29th day of December, 1894, as directs
that a peremptory writ of mandamus issue.

*Francis M. Scott* and *James M. Ward*, for the appellant.

*Theodore E. Hancock*, *Attorney-General*, *G. D. B. Hasbrouck*, *Deputy Attorney-General*, and *John W. Hogan*, for the respondent.

PUTNAM, P. J.:

Section 1, chapter 565, Laws of 1893, provides that " There shall be imposed for the fiscal year beginning on the first day of October, eighteen hundred and ninety-three, *on each dollar of taxable real and personal property of this State*, for the care, medical treatment, maintenance and transportation of the insane poor to State hospitals, the payment of officers' salaries, the payment of employees' wages, and ordinary and incidental repairs in State hospitals, a tax of one-third of a mill, to be assessed, levied and collected by the annual assessment and collection of taxes for that year, and *paid by the several county treasurers* into the treasury of this State, to be held by the treasurer for application to the purposes herein specified." Under the provisions of said statute the Comptroller of the State called upon the city of New York to pay the sum of $608,279.87, its share of the tax levied under the provisions of the act — that sum being about forty-five per cent of the whole amount to be raised.

The authorities of the city declining to pay the tax in question, the Attorney-General obtained a writ of mandamus to be issued, to which the defendant having duly made a return, the issues thus raised were tried and a verdict rendered in favor of the plaintiff, by direction of the court, for $716,516.72, the amount of the tax and interest. A peremptory mandamus was thereupon ordered to be issued. Defendant appeals to this court.

No question is raised by the learned counsel for appellant as to the power of the Legislature, *under the Constitution*, to impose the tax in question upon the taxable property in the city and county of New York. Nor does he object to the practice adopted by the Attorney-General, if, in fact, any tax is due and payable under the act of 1893 from the city and county of New York.

Nor does he insist that the language of section 1, chapter 565, Laws of 1893, if read alone, without reference to any other statute, would not imply a tax upon *all the taxable property of the State*, including that located in the said county of New York.

But it is urged by. defendant that chapter 565 (*supra*) is an amendment of chapter 214, Laws of 1893, the title of the latter act being as follows: " An act to appropriate money for the care, medical treatment, clothing, support and transportation to State hospitals of the insane poor, under the provisions of chapter one hundred and twenty-six of the laws of eighteen hundred and ninety." He, therefore, calls our attention to the principle established in *Smith* v. *The People* (47 N. Y. 330, 339) and kindred authorities, that in a case of doubt or of uncertainty as to the construction of a statute, acts " *in pari materia,* passed before or after, and whether repealed or unrepealed, may be referred to in order to discern the intent of the Legislature in the use of particular terms," and urges that chapter 565, Laws of 1893, should be read in connection with chapter 126 of the Laws of 1890 ; that as the last-named act does not apply to the city and county of New York, neither does the act of 1893, enacted to provide means to carry out the provisions of the act of 1890, although, by its terms, apparently providing for a tax upon all the taxable property of the State.

I am of opinion that the position taken by the defendant cannot be sustained. The authorities upon which he relies are only applicable where there is a doubt or uncertainty as to the construction of a statute. They do not apply where the language used by the Legislature is plain and unambiguous and its meaning clear. The act of 1893 provided that " there shall be imposed for the fiscal year beginning on the first day of October, eighteen hundred and ninety-three, on each dollar of taxable real and personal property of this State   *   *   *   a tax of .one-third of a mill." The defendant urges that the act in question should be construed as if after the provision for the tax upon each dollar of taxable real and personal property of the State it contained the words *except such real and personal property as is situated in the city and county of New York.* We are not authorized to interpolate such a provision in the statute for the reason above suggested, that its language is plain, and it provides for a tax upon *all* the taxable property of the State, making no exception of property situated in the city and county of New York. If it had been the intention of the Legislature to impose the tax in question upon a portion of the counties of the State, and to except another portion containing nearly one-

half of the taxable property of the State, we may properly assume that it would have so declared in the act. Hence, the meaning of the words contained in the act cannot properly be changed or restricted by its title, or by reference to any other statute. In the language of *McCluskey* v. *Cromwell* (11 N. Y. 593), "it is not allowable to interpret what has no need of interpretation." " When the language of a statute is apt and the construction plain, the construction cannot be affected by the title ; that can only be resorted to when the statute itself is doubtful or ambiguous." (*Matter of the Village of Middletown*, 82 N. Y. 136.) " Where the intent is plain nothing is left to construction." (*U. S.* v. *Fisher*, 2 Cranch, *358–*386.)

So, also, it is said in Cooley's Constitutional Limitations (*p. 55): " In the case of all written laws it is the intent of the lawgiver that is to be enforced. But this intent is to be found in the instrument itself. It is to be presumed that language has been employed with sufficient precision to convey it, and unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain except to enforce it. ' Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction.' " (See, also, *People ex rel. Bockes* v. *Wemple*, 115 N. Y. 302–307, 308, where the same doctrine is laid down in the opinion of Gray, J.)

Under the well-established doctrine enunciated in the above and many other authorities, I am unable to see how section 1, chapter 565, Laws of 1893, can be construed in such a manner as to exempt the taxable property situated in the city and county of New York from taxation thereunder. As suggested, the language of the act is not obscure, and it plainly imposed a tax on all the property of the State, making no exception in favor of any portion thereof.

Defendant assumes that under chapter 126, Laws of 1890, property situated in the city and county of New York was not taxable to raise funds to carry out its provisions, and he says: " The title of the act of 1893 is : ' An act to appropriate money for the care, medical treatment, clothing, support and transportation of the insane poor, under the provisions of chapter 126 of the Laws of 1890.' "

"Thus, by its very title, the Legislature tied together the act of 1890 and the act of 1893. The latter is but the supplement of the other. They cannot be read apart — they must be read together."

"'Under the provisions of chapter 126 of the Laws of 1890,' says the act of 1893. 'The provisions of this act shall not apply to or include the counties of New York, Kings and Monroe,' says the act of 1890."

If the act of 1890 did exempt property in said counties from future taxation, as assumed by defendant, there would be much force in his position. But the act contains no such exemption.

It provides for a State board to take charge of the insane, insane asylums and the enlargement thereof; for a division of the State into asylum districts; sending patients from county to State asylums, and their maintenance therein by the State. It further provides that the cost and expense of buildings and equipments, of the transportation of the insane to the State asylums, of the custody, care, maintenance, treatment and clothing of such insane patients in said asylums, and other expenses, shall be paid by the Treasurer of the State on the warrant of the Comptroller, out of any moneys appropriated to carry out the provisions of the act. After the provisions for districting the State, enlargement of the hospitals, removal of the indigent insane thereto, the annual report to the Comptroller by the State Commissioners of Lunacy and managers of State asylums, of the probable cost and expense of carrying out the provisions of the act, and the enactment that the State shall bear the expense, section 13 provides that: "The foregoing provisions of this act shall not apply to or include the counties of New York, Kings or Monroe, nor embrace the State asylum for insane criminals at Auburn, nor the State asylum for insane criminals at Matteawan, nor the State asylum for insane emigrants on Ward's Island in New York city, or any of them, except as provided in the succeeding section of this act, nor shall it be construed to affect those provisions of existing statutes by which the three counties aforesaid are now permitted to send their acute and chronic insane to State asylums."

The sections of the act preceding section 13 (*supra*) make no provision as to how the State shall thereafter raise the money necessary for the maintenance of the insane. The act is silent in that

regard. It provides that the pauper and indigent insane of the State, except those in the three counties of New York, Kings and Monroe, shall be wards of and supported by the State. But it was left to future. legislation to provide money to pay the expenses that should be incurred *by the State* for the maintenance of the pauper and indigent insane. I do not think that the language of the act justifies the assumption of defendant that its provisions indicate an intention on the part of the Legislature that in raising funds for the care of the pauper and indigent insane the taxable real and personal property situated in the city and county of New York should be exempt from future taxation. The Legislature did not intend by section 13 (*supra*) to affect the provisions of the act making indigent insane of the other counties *wards of the State — of the whole State —* under the care and charge of the State, and to be maintained by it. The members of the Legislature from the counties of New York, Kings and Monroe have the same right to act, to vote on any measure relating to the care and maintenance of the indigent insane, as legislators from other parts of the State. The pauper and indigent insane to be provided for under the statute as wards of the State are as much wards of that portion thereof included in the said counties as of the other parts thereof. How money should be raised to support these wards of the State was left open for future action by the Legislature.

It may be that it was unjust to compel the city and county of New York, while taking the whole charge and care of its own insane, to also pay a tax to help support the insane of the other counties of the State. But the statute under consideration is plain and unambiguous, and it is not claimed to be unconstitutional. Our business is to construe it, not to pass upon the justice or injustice or wisdom of its provisions. We are not authorized to change the plain language of the statute in order to make it conform to our ideas of justice and equity. If we possessed legislative power we might enact a different act than the one we are called upon to construe. We might deem that the county of New York, having the right under section 13 of the act of 1890 to use the State asylums for its acute and chronic insane, should properly and equitably pay some part of the expenses of keeping up the State insane asylums, but not a tax equal in amount to that imposed on the other counties

of the State. But, as we have seen, we are only called upon to interpret the, act, and it makes no provision for exempting the city and county of New York from the payment of a tax equal to that imposed on the other counties of the State.

This view leads to an affirmance of the order and judgment, except that part thereof charging the defendant with interest. I think the position taken by appellant in regard to interest is correct. He should only have been charged with interest on the balance remaining unpaid at the expiration of thirty days from the first of May. (§ 12, tit. 1, chap. 427, Laws of 1855.)

The judgment should be corrected in this regard, and, as modified, affirmed, without costs to either party.

HERRICK, J., concurred; MAYHAM, P. J., not acting.

Judgment modified, and, as modified, affirmed, without costs.