(14 Misc. Rep. 531.)

PEOPLE ex rel. EAKINS v. ROOSEVELT et al., Police Commissioners.

(Common Pleas of New York City and County, General Term.  December 2, 1895.)

POLICEMEN—RETIREMENT—PENDING CHARGES.

> A complaint against a police officer, filed by a citizen with the police board, notice of which is given to the officer, is a "charge pending," within Laws 1895, c. 569, § 307, requiring the police board to retire any officer who shall have served for 20 years, where there are "no charges against him pending"; and in such case an officer is not entitled to be retired as a matter of right, though no formal charges have been preferred. 34 N. Y. Supp. 228, affirmed.

Appeal from special term.

Application by Joseph B. Eakins against Theodore Roosevelt and others, as police commissioners of the city of New York, to convene and order that relator be relieved and dismissed from the police force, and placed on the roll of the police pension fund.  The application was denied (34 N. Y. Supp. 228), and relator appeals.   Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and PRYOR. JJ.

Hess, Townsend & McClelland, for appellant.

Francis M. Scott, for respondents.

DALY, C. J. The relator, Police Captain Eakins, of the Fifteenth precinct, had been a member of the police force of the city of New York, and performed duty on such force for a period of 20 years and upward on the 18th day of May, 1895, upon which date he made application to the board of police commissioners to be relieved and dismissed from the force and service, and placed on the roll of the police pension fund; and he was entitled, of right, to have his application granted by the board, provided there were at that date no charges against him pending. Laws 1895, c. 569, amending Consolidation Act, § 307. On May 13, 1895, five days before his application, the board had received from C. H. Parkhurst, T. D. Kenneson, and Frank Moss, executive committee of the Society for the Prevention of Crime, a letter, inclosing copies of papers, with a statement that they had been sent that day to the mayor, the superintendent of police, and the captain of the Fifteenth precinct (the relator). The paper sent to the relator on May 13th, a copy of which was transmitted to the board on the same day, was as follows:

"New York, May 11th, 1895.

"Joseph B. Eakins, Captain of the 15th Police Precinct, New York City—Sir: You will find inclosed a list of resorts in your precinct which, presumably with your knowledge and by your connivance, are being conducted in open and flagrant violation of law. Whether you had ever made yourself familiar with your obligations in such matters prior to your appointment to a captaincy may be something of a question, but for the past three years there has been such an amount of educational matter sent out from the office of the Society for the Prevention of Crime bearing upon the official delinquencies of the police, and the sworn duties devolving upon them, that it would seem that even the intelligence, and possibly the conscience, of a police captain would have received certain impressions of a quickening and stimulating character. The opinion seems to have been formed in your mind, and in that of your fellow captains, that the criminal administration of the affairs of your department had been so long a part of the life of the town that no change in municipal government could suffice to work any substantial alteration or betterment. Things could not have been managed in your precinct, as we know them to have been managed in the months that have transpired since the new city administration came into power, if you had had any particular concern or anxiety as to what that administration might intend and undertake. We have, in the meantime, been keeping careful watch upon you and your colleagues, and have decided to furnish you and the new police commissioners with some of the results of our observation, not because of the existence of a certain amount of criminal lawlessness in your precinct, but for the reason that the viciousness of the resorts which you are harboring is so gross and open that the Fifteenth precinct is now, as it has long been, a moral plague spot in the city and a reproach to our civilization, and a disgrace to the department that has hitherto tolerated it. Careful evidence has been secured in regard to the resorts specified in the accompanying letters, most of which you will probably instantly recognize. We shall observe your method of dealing with our complaint, and shall return to the matter later if you show any disposition to temporize or to evade your distinct obligation.

"Yours, truly, C. H. Parkhurst,
"T. D. Kenneson,
"Frank Moss,
"Executive Committee.

"Rooms of the Society for the Prevention of Crime, United Charities Building.

"Saloons which are frequented by prostitutes: Wolfers,' 72 University Place; Stevenson's, S. W. corner Thompson & West 3rd St.; Monell's, 121 West 3rd street; 'The Golden Swan,' S. E. corner 6th Ave. & West 4th St.

"Houses of prostitution: 204 Thompson street; 230 Wooster street; 127 West 3rd street (rear); 224 Wooster street; 141 West Third street; 134 West Third street.

"Houses of Assignation: 48 Great Jones street; 52 Bond street; 54 Great Jones street; Daly's Hotel, 50 East 13th street; 12 East 13th street; 69 West 10th street; Hotel St. Lawrence, 30 East 13th street; 82 West 3rd street; 230 Thompson street; Hotel Jerome, S. W. corner 12th street and University Place; 245 Wooster street; 132 Macdougal street; 210 Thompson street; 209 Wooster street; 14 East 13th street."

The letter received by the board on May 13th was as follows:

"New York, May 11th, 1895.

"Theodore Roosevelt, Chairman Board of Police Commissioners, New York City—Dear Sir: Accompanying this please find copies of papers which, as representing the Society for the Prevention of Crime, we have to-day sent to the mayor, the superintendent of police, and to the captain of the Fifteenth precinct. With assurances of our cordial support in the work so recently devolved upon you, we are,

"Yours, very truly,                          C. H. Parkhurst,
                                             "T. D. Kenneson,
                                             "Frank Moss,
                                             "Executive Committee.
"Rooms of the Society for the Prevention of Crime, United Charities Building."

On the date of the receipt of these papers the board referred the subject to one of the commissioners (Parker), to formulate the charges contained in them more in detail, and obtain evidence in support of such charges. Commissioner Parker thereupon, on the same day (May 13th), had an interview with the acting superintendent of the Society for the Prevention of Crime, and requested him to produce evidence in support of the charges. On the 14th the latter produced to Commissioner Parker voluminous evidence, and on the 15th the commissioner requested the attorney for the society to put the charges in more detailed form, and the attorney thereupon took the matter in charge. Such was the condition of affairs when, on the 18th, Capt. Eakins made his application to be retired; and the sole question is whether at that time, in the sense of the statute, charges were pending against him. On the 22d and 23d of May the relator was informed by Commissioner Parker of the charges against him, and that they were being looked into. On the 27th the charges, in detailed form and verified, were brought before the board, and the relator's application for retirement was denied. On the 28th the charges were put into another form, according to a system of the department, by superadding to the charges made by the citizens a charge, in form, by a commanding officer of the force. In that form they were served upon the relator on May 28th.

It seems impossible to answer the question submitted upon this appeal except in the affirmative, and there is little to add to the careful opinion of the learned justice at special term, who held that charges were pending against Capt. Eakins at the time of his application, and that his petition for mandamus to compel the police board to relieve him and place him upon the pension roll must be denied. The objections to this conclusion, it seems to me, are based, not upon substance, but upon words, and the technical mean-

ing of "charges" and "charges pending." The accusation of neglect of duty and inefficiency, against the captain, had been made by responsible citizens, directly to him and to his superior officer, and to the board whose duty it was to take cognizance of such allegations. It was after receipt of those accusations in writing that the relator applied for retirement, and this, it seems to me, is exactly what the legislature intended to prevent, namely, resignation under charges. In considering whether such accusations so made were "pending charges," Judge Bischoff has referred to the authorities holding that the words of a statute, if of common use, "are to be taken in their natural, plain, obvious, and ordinary signification" (People v. Wemple, 115 N. Y. 302, 22 N. E. 272; Polhemus v. Railroad Co., 123 N. Y. 502, 26 N. E. 31); and that, where words have two significations, the popular one should have the preference (Suth. St. Const. §§ 247–258, 357).

It has been held that the expression, "charged with crime," signifies that legal proceedings have been commenced by complaint or indictment (State v. Duncan, 9 Port. [Ala.] 260; Day v. Inhabitants of Otis, 8 Allen, 477; Mary v. State, 5 Mo. 71); and that "charges" signifies an accusation made in a legal manner (Tompert v. Lithgow, 1 Bush, 178), and implies an original complaint in the first instance preliminary to a formal trial for a crime (Ryan v. People, 79 N. Y. 598). What is the legal manner of accusing a police officer before the police board? What constitutes an original complaint in the first instance in such a prosecution? The statute prescribed nothing more than that charges must be "written." Consolidation Act, § 272. No particular form is prescribed or required. It is not required that more should be done than to specify the offense by any language which conveys that information, and enables the accused to prepare for trial. People v. Board of Fire Com'rs, 77 N. Y. 153–155. The police board is not a court, and the same formalities in its procedure as in ordinary tribunals of criminal jurisdiction are not required. A general charge is sufficient to answer the purpose intended. People v. Board of Police Com'rs, 93 N. Y. 97. No particular rules of procedure govern the police board. They may proceed in their investigation in any manner they choose. People v. McClave, 123 N. Y. 512, 25 N. E. 1047. In order that the discipline, efficiency, and utility of the police force may be maintained, and those unfit for such duties may be removed, the law should be construed liberally, with a view to accomplish the purpose intended. People v. Doolittle, 44 Hun, 293.

Having in view these requirements, the letter addressed by the society to Capt. Eakins and transmitted by it to the board, as above described, were written charges within the statute, if the communication specified an offense, in plain language, which enabled the accused to meet the accusation. There can be no doubt that an offense was so described and specified as to leave no room for question. He was told that a number of vicious resorts were conducted in open and flagrant violation of law in his precinct, presumably with his knowledge and by his connivance, and a list of them was

given, with a statement of their character, and he was charged substantially with neglect of his duty as a police captain in harboring such resorts of viciousness, which were so gross and open that his precinct then was, and had long been, a disgrace to the department. The fact that the captain concluded to demand his retirement from the force within five days after receiving the society's letter is evidence that the charges were sufficiently specific and fully understood. The board might undoubtedly, therefore, have acted upon those charges and cited the accused to answer them; but, although they were received by the board on the 13th, the same day that they were sent to the captain, he was not summoned to answer until after his application for retirement on the 25th. Were these charges pending at the time of such application? It is contended, on his behalf, that, until notice had been given to the accused by the board, or he had been cited to answer, there were no charges pending against him. But notice to the accused is only one step in the pendency of such a prosecution. The first step is the presentation of charges to the board. The next may be notice from the board to the accused, or may be reference of the complaint to counsel or committee, to be formulated. In any case the proceeding is commenced when the written accusation subscribed by the complainant is presented to the board in any form of which it must take notice; and after the proceeding was commenced it is pending until terminated. Suppose that the statute forbade the commissioners to retire an officer against whom charges were pending. Could the commissioners, after receipt of charges, postpone notice to the accused in order to accept his application for retirement, without violating the statute? If not, could the accused, taking advantage of the delay necessary for formulating the charges already presented, interpose his application and defeat the statute? That is the case here; and, inasmuch as the statute does substantially forbid the retirement of an officer while charges are pending, I do not see how the commissioners themselves could escape accusation of breach of duty had they disregarded the complaint made by the society and retired the relator upon his subsequent application.

The order appealed from should be affirmed. All concur.