STATE ex rel. McGRATH v. HOLLADAY, State Auditor.

**Constitution of 1875:** EXECUTIVE DEPARTMENT: STATE BOARD OF EQUALIZATION: COMPENSATION OF ITS MEMBERS. Under the State constitution of 1875, officers of the Executive Department are not entitled to any compensation for services rendered by them as members of the State Board of Equalization.

*Mandamus.*

*Edwin Silver* for relator.

**J. L. Smith,** Attorney General, for respondent.

HENRY, J.—By an act of the General Assembly, approved March 30th, 1872, the members of the State Senate and the Lieutenant Governor were constituted a State Board for the equalization of the valuation of real and personal property among the several counties in the State, and their compensation fixed at the same sum *per diem* as was allowed members of the General Assembly, which was five dollars per day. Section 1, article 5 of the constitution provides that "the Executive Department shall consist of a Governor, Lieutenant Governor, Secretary of State, State Auditor, State Treasurer, Attorney General and Superintendent of Public Schools, all of whom, except the Lieutenant Governor, shall reside at the Seat of Government during their term of office, and keep the public records, books and papers there, and shall perform such

duties as may be prescribed by law." Section 24, of the same article, provides that "the officers named in this article shall receive for their services, a salary to be established by law, which shall not be increased or diminished during their official terms; and they shall not, after the expiration of the terms of those in office at the adoption of this constitution, receive to their own use any fees, costs, perquisites of office or other compensation. All fees that may hereafter be payable by law for any service performed by any officer provided for in this article, shall be paid in advance into the State Treasury."

The 18th section, of the 10th article, constitutes the Governor, State Auditor, State Treasurer, Secretary of State and Attorney General, a State Board of Equalization, requiring them to adjust and equalize the valuation of real and personal property among the several counties of the State, and to perform such other duties as were then, or might thereafter be prescribed by law.

These are all the provisions to be found on the subject in the constitution or the statutes, and the question for consideration on this application for a mandamus is, are the members of the Board of Equalization, as at present constituted, entitled to the compensation which was allowed the members of the board under the act of 1872? Among the officers named in the 5th article of the constitution, are those who compose the State Board of Equalization, and the terms of those now in office, all commenced since the adoption of the present constitution. Membership of that board is not an office which either of the members can decline without resigning his principal office. They are ex-officio members of the State Board of Equalization, and as Governor, Secretary of State, State Auditor, State Treasurer and Attorney General, bound to discharge the duties imposed upon them as such officers. By the 24th section of article 5, they are not entitled to receive any fees, costs, or perquisites of office, and if nothing more had been added, the argument would prevail, that

those terms applied strictly to fees, costs and perquisites of office, legitimately connected with the duties of their respective principal offices; but the words " or other compensation," have a broader significance. They mean more than is embraced in the terms " fees," "costs," " and perquisites of office; " nor do they apply to an increase of salary. The first clause of the section provides against such increase by declaring that they " shall receive for their services a salary to be established by law, which shall not be increased or diminished during their official terms."

The meaning of the constitutional provision we take to be, that for any duties imposed upon them as executive officers, they shall receive no compensation except the salary established by law. That the duty of serving as members of the Board of Equalization is imposed upon them respectively as executive officers is clear, if they are not at liberty to decline the performance of that service, and that they cannot is placed beyond controversy by the first section of article five, which requires them respectively to perform such duties as may be prescribed by law. The relator contends that, as the constitution requires the General Assembly to establish a salary for each of these offices, and it has failed to do so, they are entitled to the compensation which was allowed for services required of them, when the constitution was adopted. Salaries for these offices were established by law when the constitution was adopted, and the constitution continued them as established until otherwise provided by the General Assembly, and the provision of the constitution is imperative, that " after the expiration of the terms of those in office, at the adoption of the constitution," the officers named, shall receive no other compensation than the salary. That provision requires no legislation to give it effect. It were an easy matter to evade that constitutional provision, if these sections admitted of any other construction than that which we have given them. Additional duties to those now required might be imposed upon them and a compen-

State ex rel. McGrath v. Holladay.

sation allowed exceeding the amounts of their several salaries. The next General Assembly might make them Commissioners of the Permanent Seat of Government, or commissioners to superintend the erection of some public building, and allow them for their services, as such, salaries exceeding those allowed them as executive officers; could the Legislature do this without violating the constitution? If so, the constitutional provision is worthless and without meaning. The provision that "all fees that may hereafter be payable by law for any service performed by any officer provided for in this article, shall be paid into the State Treasury," is somewhat obscure, and it might be argued, that the fees to be paid into the State Treasury, are such as are allowed for services provided for in that article, but the words " provided for in that article " relate to the officers named therein, and not to the services performed by such officers. The duties of neither Treasurer, Superintendent of Public Schools, Auditor or Attorney General are prescribed in that article, and the provision we are considering would have no application to those officers, if the words " provided for," &c, are to be regarded as relating to the services prescribed, and not the officers provided for in that article. We think that, as a member of the State Board of Equalization, relator is entitled to no compensation for his services, and peremptory writ therefore is refused. All concur, except NORTON, J., dissenting, and SHERWOOD, C. J., not sitting.

PEREMPTORY WRIT REFUSED.

HOUGH, J., CONCURRING.—The 4th section of the 5th article of the constitution, provides that the officers named in said article, among whom is the relator, shall receive, for their services, a salary to be established by law, which shall not be increased, or diminished, during their official terms; and they are not allowed to receive any fees, costs, perquisites of office, or other compensation. That is, they shall receive no other compensation than the salary estab-

lished by law.   No other compensation for what?   For
their services.   For what services?   For their services as
such officers.   Why did the relator render the service for
which he now seeks special compensation?   Because he
was Secretary of State, and the constitution says the Sec-
retary of State shall render such service.   It being the
duty of the Secretary of State to render such service, it is
wholly immaterial that in rendering it, he acted as a mem-
ber of the Board of Equalization.   The constitution makes
it his duty to act as a member of that board.   This duty
is not devolved upon M. K. McGrath, but upon the Secre-
tary of State, whoever he may be.   It is a duty attached
to the office, and therefore it is an official duty; and for
the performance of his official duty, the Secretary of State
is entitled to no other compensation than his salary.   The
service rendered by the relator with other officers in ad-
justing and equalizing the valuation of real and personal
property among the several counties in the State, is, it
must be conceded, an important one; one for which the
convention that framed the constitution might very appro-
priately have authorized the Legislature to provide special
compensation.   But that body evidently thought that the
Legislature would provide salaries for these officers which
would afford adequate compensation for all the services
which they were required to render to the State.   How
else could it have happened that in constituting the Gov-
ernor, Secretary of State and other officers a Board of
Equalization in lieu of the board previously composed of
State Senators, they simply provided that they should per-
form such duties as were then, or should thereafter be,
prescribed by law, but did not say that they should receive
the same compensation theretofore provided by law for the
senators, when acting as a board, or that they should re-
ceive such compensation as the Legislature might provide,
or indeed any compensation whatever.   It is a significant
fact that the Legislature has not undertaken to provide any
compensation for these officers, when acting as a Board of

Equalization; and it is plain to my mind, that the compensation provided for the senators when they performed this service, cannot be transferred by implication to the executive officers now composing the board, even though there were no constitutional inhibition in the way. By the 7th section of article 4 of the constitution, it is provided that in the event the General Assembly shall fail, or refuse to district the State for senators, as therein required, it shall be the duty of the Governor, Secretary of State and Attorney General, within thirty days after the adjournment of the General Assembly on which such duty devolved, to perform said duty, and to file in the office of the Secretary of State a full statement of the districts formed by them, which statement, it is provided, shall after certain prescribed formalities, be as binding and effectual as if done by the General Assembly. Would it be pretended that the officers named, in rendering such service, would not be acting in their official capacity, because they would, for the time being, exercise the functions of the Legislature, and would they, while engaged in the performance of such duty, be entitled to the *per diem* allowed by law to the members of the Legislature? Is is not plain that this duty though legislative in its character, is imposed upon them as executive officers, and that they cannot claim any additional compensation therefor? Undoubtedly, any of the executive officers named in the 5th article of the constitution, may for any service of a private and unofficial character, receive such compensation as may be agreed upon between them and the persons employing them, but for any service which they are required by the constitution to render to the State, they can receive no other compensation than their salaries. I concur in refusing the writ.

NORTON, J., DISSENTING.—Not concurring in the opinion of the court in this case, I deem it not inappropriate to express the reasons for my dissent.

Section 18, article 10 of the constitution provides, "that there shall be a Board of Equalization consisting of the Governor, Secretary of State, State Auditor, State Treasurer and Attorney General. The duty of said board shall be to adjust and equalize the valuation of real and personal property among the several counties in the State, and it shall perform such other duties as are or may be prescribed by law." It has been held by this court that in addition to adjusting and equalizing the value of property, said board are charged with the duty of assessing certain descriptions of property liable to taxation. (*Hannibal & St. Jo. R. R. Co. v. State Board of Equalization*, 64 Mo. 294.)

The questions arising in this case are as follows: Are the members of this board entitled to compensation for the services thus required? If so, is that compensation fixed by law, and if so fixed, is there any existing appropriation made to pay it? The service required of this board is one of great public concern, vitally affecting the revenues of the State, full of responsibility and labor, and in determining the first question presented it is of some moment to look to the state of the law on this subject before the provision above quoted was adopted. Under the acts of 1873, p. 63, the Board of Equalization was composed of the State Senators, in number 34, who received as compensation, five dollars per day, while engaged in the work of the board. This system was an expensive one, and it was deemed wise that it should be superseded by a board composed of a less number, whereby its expenses would be greatly diminished without detriment to the public interests committed to its charge. It was not designed that this work should cost nothing, but simply that its cost should be reduced. That the State ought to pay for such service, and that the people of the State are willing to pay for all needful work which public necessity demands, will not be seriously controverted. It would be an impeachment of their sense of justice to take any other view, and

unless there is some other provision of the constitution which requires this work to be done gratuitously or forbids compensation for it, it may be taken as conceded that the members of the board are entitled to it.

It is claimed that Sec. 24, Art. 5, of the constitution contains this prohibition. It is as follows: "That the officers named in this article shall receive for their services a salary, to be fixed by law, which shall not be increased nor diminished during their official term, and they shall not, after the expiration of the terms of those in office at the adoption of this constitution, receive to their own use any fees, costs, perquisites of office or other compensation. All fees that may hereafter be payable by law for any service performed by any officer provided for in this article shall be paid in advance into the State treasury." This section was manifestly designed to confine the compensation of the officers included in it among whom are the Governor, Attorney General, Secretary of State, Auditor and Treasurer, to the salaries which might by law be established for each respective officer, for all work done by him as such officer. They are not allowed to receive any fee for work done by them as such officers, nor any other compensation for work done by them as such officers. This, I think, is the full scope of the section. If the Attorney General performs all the duties of his office to the full extent of the requirements of the law, and takes a fee as a lawyer for arguing before this court a case between two citizens, no interest of the State being involved, it would not be pretended that he might not rightfully do so, and that the inhibition contained in said section that he should not receive any fee or other compensation, would apply. My view is that the inhibition imposed to receiving any other compensation relates entirely to compensation for services rendered by the respective officers as such officers, in their respective offices. Under this view, unless it can be made to appear that the work for which compensation is claimed by

relator was performed by him as Secretary of State, he is entitled to it.

Although the constitution creates a Board of Equalization and makes five members of the Executive Department component members of it, yet the duties to be performed, and the work to be done, are not enjoined upon them as officers, but as a board, and as such to assess, adjust and equalize the valuation of property, &c. It is neither the act of the Governor, Attorney General, Secretary of State, Auditor or Treasurer, but the act of a board, the work of which is required to be signed by its president and attested by its secretary. Neither the Governor as governor, nor the Secretary of State as such, nor the Attorney General as such, could do this work. It is done by them as a board of assessors, equalizers and adjusters, and the constitution expressly declares that it shall be so done. A senator while acting under the law which required this board to be composed of all the senators of the State, could not be said to be acting in the capacity of senator, but simply as a constituent member of another body, having no legislative duty or function to perform, his right to membership thereof being dependent on the fact of his being a senator, and when he exhibited his title or right to membership in such body his official character as senator was lost or merged in the new duties thus assumed, and in the new relations thus formed. His act could not be said to be the act of a senator, but the act of an assessor invested with power to swear witnesses, hear evidence and adjudicate any disputed question which might arise. Nor can it be said, with any propriety, that the Governor, in acting as a member of said board, was performing an executive duty, or that the law officer of the State was acting as attorney General, or that the Secretary of State was acting in that capacity, or that the Treasurer was acting as such.

The report of the proceedings of the first Board of Equalization under our present constitution supports the

view here presented. The first step taken by the five executive officers named, was to subscribe an oath " that they would faithfully demean themselves in office as the State Board of Equalization, and that they would honestly and impartially assess, adjust and equalize the aggregate valuation of the property of each one of the railroads liable to taxation in the State." Their work was certified to by C. H. Hardin, not as Governor, but as president of the Board. If then, the relator, while performing the service for which he claims compensation, was not performing it as Secretary of State, it follows that he is entitled to pay for it, if the words " other compensation " in section 24 relate only to work done by him as such officer. This I have attempted to show. It is provided, by statute, that the members of the Board of Equalization shall be entitled to the same compensation as members of the General Assembly, hence the amount of compensation is fixed by law.

Has there been an appropriation made applicable to its payment? Acts 1877, p. 12, Sec. 4, provides that there is hereby appropriated out of the Treasury for the purpose of paying the cost of assessing and collecting the revenue, the sum of $280,000. This fund, so appropriated, could be properly drawn upon for the payment of relator's claim, as the revenues of the State are not in condition to be collected until the Board of Equalization complete their work. The relator being entitled to the compensation claimed, and there being an appropriation of money to pay it, has, in my judgment, a right to a peremptory writ compelling the Auditor to audit his account and draw his warrant therefor.