ATLAS POWDER COMPANY *v.* DETROIT FIDELITY & SURETY
CO. ET AL.

and

JOHNSON & MATTHEWS *v.* B. C. GEORGE & COMPANY.

(*Nashville*, December Term, 1931.)

Opinion filed July 2, 1932.

606

ALBERT H. WILLIAMS, REECE L. MACY, S. L. FELTS and McGUGIN & EVANS, for complainant, appellee.

WILSON, KYSER, ARMSTRONG & ALLEN, GOODPASTURE & CARPENTER, W. B. MARR, JIM SPARKS, GEORGE J. GALE, L. D. SMITH, Attorney-General, JOHN L. NEELY, Assistant Attorney-General, and W. E. NORVELL, JR., for defendant, appellant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a general creditors' proceeding in which the affairs of B. C. George & Company, highway contractors, are being administered. The surety on the contractor's bond, executed for the protection of subcontractors, laborers, etc., appeals from the allowance by the chancellor of the claims of certain subcontractors and also appeals from a ruling of the chancellor in other particulars.

The claims of these subcontractors were resisted below on the ground that they had not paid the privilege tax levied against such occupations for the year covering the contract. Prior to the hearing the subcontractors paid double the privilege tax due at the time the

contract was made and the penalty prescribed by law, and the chancellor was of opinion accordingly that section 17 of chapter 13 of the Acts of 1931 of the Second Extraordinary Session of that year authorized the allowance of the claims.

The Act referred to is the Revenue Bill of that year and its title is "An Act entitled an Act to provide for general revenue for the State of Tennessee and the counties and municipalities thereof, to be known as the General Revenue Bill; to provide means for its enforcement, and providing penalties for its violation, and repealing all Acts in conflict herewith."

Section 17 is in these words:

"Be is further enacted, That no contract heretofore made by persons, firms, or corporations engaged in a business or occupation subject to a license or privilege tax, under this or any other Act, shall be invalid or unenforceable in the courts because of the failure of such person, firm or corporation to have paid such license tax at the time such contract was made or was performed; Provided, that such person, firm or corporation shall prior to the date of adjudication in the court of original jurisdiction pay double the tax due at the time the contract was made and in addition thereto the penalty prescribed by law."

The contention is that section 17 contains matter not within the scope of the title to the Act and that the Act accordingly must either be held void or section 17 elided. We think the chancellor correctly overruled this contention. The general purpose of the Act is to provide revenue for the State. Section 17 is calculated to accomplish that purpose. By making the contribution indicated in section 17 to the current revenues of the State,

those in default with respect to previous taxes may remove a disability incident to such default. Section 17 tends toward increasing the revenues of the State. It is germane to the general scheme to provide revenue for the State. A reward for paying taxes, just as a penalty for failure to pay, is a means of providing revenue.

We think that appropriate methods for collecting past due revenue as well as appropriate methods for collecting current revenue are both properly included in a statute entitled like the one before us. It is revenue that is sought in either case. Revenue does not cease to be revenue because it is over-due. The Act is not one merely to levy taxes and to provide means for its enforcement, but one to *provide revenue* and to provide means for its enforcement.

Counsel discuss the meaning of the word revenue and undertake to show that section 17 does not deal with revenue proper.

In *Shields* v. *Williams,* 159 Tenn., 349, 370, this court took from leading authorities the following:

"If the words in a title, taken at any sense or meaning which they will bear, are sufficient to cover the provisions of the Act, the Act will be sustained though the meaning so given the words may not be the most obvious or common."

We accordingly reach the conclusion that the section of the Act criticised is not beyond the title of that statute and the chancellor properly so held.

■ Objection is made to the allowance of a fee out of the fund in court for counsel who filed the general creditors' bill herein. We see no reason why this fee should not have been allowed just as in other general creditors' proceedings. It is said that under the pro-

visions of chapter 80 of the Acts of 1929, the Commissioner of Highways is authorized to pay into court retained percentage due a highway contractor, when the Commissioner receives notice that a suit has been brought against said contractor on account of said contract. When several such suits are brought, the Commissioner of Highways is authorized to pay into court retained percentage to be divided or prorated among those bringing suit. The argument is that, since the Commissioner of Highways is thus empowered to pay this money into court, the general creditors' bill did not really bring in the money for distribution, and counsel filing that bill were not accordingly entitled to charge their fee against it.

The statute does not authorize the Commissioner to pay retained percentage into court until suit is brought against the contractor. This suit was brought for the benefit of all creditors of the contractor. The suit, therefore, made available for such creditors the fund paid in by the Commissioner of Highways. The fact that there was no particular difficulty incident to calling this fund into court can only be looked to in determining the amount of compensation allowed counsel. It was said at the bar that there was no objection to the amount of the fee fixed by the chancellor.

Further complaint is made because the chancellor allowed interest on the claims of certain petitioners herein from the date of the filing of their original petitions. The petitioners referred to were then in default as to their privilege taxes. As stated above, these privilege taxes were later paid in double, together with penalties, and amended petitions were filed by these parties.

It is urged that interest should only have been allowed from the date of the amended petitions.

The matter of interest is discretionary with the chancellor and there is nothing in this case to lead us to interfere with this exercise of the chancellor's discretion. The defense made by the general contractor's surety to the claims of the particular petitioners did not reach the merits of those claims at all. Petitioners were only in default to the State, and it is nothing to the surety if such default was settled on terms prescribed by the State.

The action of the chancellor on the several matters mentioned herein is affirmed. The cause will be remanded to the chancery court for further proceedings. The funds in the court below will be applied *pro rata* on the several claims allowed by the chancellor, after the payment of costs, fees, etc., and executions may issue against the surety for the balances remaining due the several claimants.

All costs will be paid out of the fund in the chancery court.