### LOWDEN et al. v. WASHITA COUNTY EXCISE BOARD.

No. 30223.   May 6, 1941.

*113 P. 2d 370.*

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, all of Oklahoma City, for plaintiffs in error.

Raymond T. Plumlee, County Atty. of Washita County, for defendant in error.

DAVISON, J. Frank O. Lowden et al., as trustees of the estate of the Chicago, Rock Island & Pacific Railway Company, protested certain levies of Washita county, Okla., and appeal from the order of the Court of Tax Review denying the protest as to one item.

By virtue of chapter 11, S. L. 1933, the salaries for county commissioners, including Washita county, were fixed at $1,200 per year, and this act expressly provided that such county commissioners should not charge or collect any expenses for traveling in the performance of their duties.

Chapter 35, art. 20, S. L. 1936-1937 (Senate Bill No. 325) reads:

"An act providing for a compensation to the boards of county commissioners for the extra and nongermane duties heretofore placed in said boards by the Legislature; providing the authority and duty of the board of county commissioners and the excise board with relation thereto; and fixing the effective date of this act.

"Section 1.  From and after the first (1st) day of July, 1937, the county commissioners of the several counties may be allowed actual traveling expenses while acting in the course of their official duties; provided, however, that the total amount of such expenses for any county commissioner shall not exceed three hundred ($300.00) dollars for any fiscal year. . . ."

There are other provisions in section 2 of this act that are not material to the issue here.

In Washita county an appropriation was made for the fiscal year ending June 30, 1941, for the county commissioners, as follows:

"Board of County Commissioners

| | |
|---|---|
| Salary of 3 at $1,200 per annum | $3,600.00 |
| Surety Bonds | 75.00 |
| 'Per Diem' | 900.00 |
| Total | $4,575.00" |

The protest was directed at that part of the appropriation indicated as " 'Per Diem' " as being without authority of law on the theory that chapter 35, art. 20, supra, relied upon as authorizing such appropriation, is unconstitutional.

In this appeal it is also urged that there is a direct conflict between the provisions of the earlier act (sec. 3, chap. 11, S. L. 1933, and the 1937 act, supra) in that the former provides in substance that the $1,200 salary shall be all the compensation allowed to or paid to a county commissioner, and it also expressly provides that county commissioners shall not be allowed or paid traveling expenses. We cannot see that this enters into the constitutionality of either act, because what one Legislature is free to enact a subsequent Legislature is free to repeal. If we were called upon to construe these two acts to see which applies, a matter of statutory construction that might or might not involve constitutional law, we might determine that issue without deciding a constitutional issue. Under the limitations of the constitutional objection urged to the act of 1937, we do not think the issue of its conflict with an earlier act is necessarily involved.

The only constitutional provision that protestants say chapter 35, art. 20, S. L. 1936-1937, violates is that portion of section 57, art. 5, of the Oklahoma Constitution which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title. . . ."

In support of this contention it is argued that the provision in section 1 of the act concerning the allowance to the county commissioners of traveling expenses is beyond the scope of said act as expressed in its title, and is therefore invalid under the constitutional provision above quoted. With this contention, we cannot agree.

Protestant's contention would perhaps be correct were the courts restricted in applying and enforcing the constitutional provision above quoted, by the strict, narrow, and technical meaning of words used in legislative enactments. This, however, is not the case. Article 5, sec. 57, supra, is not to be enforced in a technical manner, so as to unreasonably cripple legislation. See Gibson Products Co. of Tulsa v. Murphy, 186 Okla. 714, 100 P. 2d 453; Chicago, R. I. & P. Ry. Co. v. Excise Board of Stephens County, 168 Okla. 519, 34 P. 2d 274; Dabney v. Hooker, 121 Okla. 193, 249 P. 381; State v. Bonner, 86 Okla. 280, 208 P. 825; Oklahoma City Land & Development Co. v. Hare, 66 Okla. 190, 168 P. 407; In re County Com'rs of Counties Comprising Seventh Judicial Dist., 22 Okla. 435, 98 P. 557. The intention of that provision is to prevent surreptitious and fraudulent legislation by prohibiting the inclusion of provisions in the body of an act that are incongruous and have no proper relation to its subject as expressed in its title. See Binion v. Oklahoma Gas & Electric Co., 28 Okla. 356, 114 P. 1096; Johnson v. Grady County, 50 Okla. 188, 150 P. 497.

As said in 25 R.C.L. 842:

". . . It (the subject of the act) may include innumerable minor subjects, provided that all the minor subjects when combined form only one general subject or topic. The connection or relationship of the minor subjects need not be logical; it is enough that they are connected with and related to a single subject in popular signification. Matters which constitute, apparently, two distinct and separate subjects are not so, in the meaning of the constitutional provision, unless they are incongruous and diverse to each other. . . ."

In speaking of the provision of the Pennsylvania Constitution which corresponds to article 5, sec. 57, supra, the Supreme Court of that commonwealth, in Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840, said:

". . . The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. As stated in Re Soldiers and Sailors Memorial Bridge, 308 Pa. 487,

162 A. 309, 310, citing Carr v. Aetna A. & L. Co., 64 Pa. Super. 343, at page 349, the provision is not applicable 'unless a substantive matter, entirely disconnected with the named legislation is included within the folds of the bill.' It is intended to operate to exclude from the measure that which is secret and unrelated. Beckert v. City of Allegheny, 85 Pa. 191."

In Steinkamp v. Board of Com'rs of Decatur County, 209 Ind. 614, 200 N. E. 211, it was said:

"The following rules of construction are well established: 'The title of an act is to receive a liberal construction, if necessary to sustain the legislative intent. If the words used in a title, taken in any sense or meaning they will bear, are sufficient to cover the provisions of the act, the act will be sustained, even though such meaning may not be the most common meaning of such words. These rules, however, are to be used to effectuate, not to defeat the legislative intent'. Hargis v. Board of Com'rs of Perry County (1905) 165 Ind. 194, 195, 73 N. E. 915. 'The courts will not resort to a critical construction of the title in order to hold a title unconstitutional. On the contrary, the language of the title is in all cases given a liberal interpretation, and the largest scope accorded the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act.' Board of Com'rs of Elkhart County et al. v. Albright et al. (1907) 168 Ind. 564, 569, 81 N. E. 578, 580."

The same general principles enunciated above have been followed in Atlas Powder Co. v. Detroit Fidelity & Surety Co., 164 Tenn. 605, 51 S. W. 2d 841, as well as City of Chicago v. Ames (Ill.) 7 N. E. 2d 294, and cases in other jurisdictions. When they are applied to the problem before us, we do not think it can be concluded with any degree of certainty that section 57, art. 5, of our Constitution is violated in chapter 35, art. 20, S. L. 1936-1937, as charged by the protestants. While it is true that the word "compensation" used in the title of said act has been distinguished from the term "expenses" (Christopherson v. Reeves, 44 S. D. 634, 184 N. W. 1015, 1019; State ex rel. Weldon v. Thomason et al., 142 Tenn. 527, 221 S. W. 491, 494; Kirkwood v. Soto, 87 Cal. 394, 25 P. 488, 489), yet its meaning has not always been so restricted, and in its broadest sense has been used to comprehend money allowances for a wide variety of purposes. See, for instance, Olentine v. Calloway, 147 Okla. 137, 295 P. 608, 610; Searcy v. Grow, 15 Cal. 118, 123; People v. Wemple, 115 N. Y. 302, 22 N. E. 272, 274; State ex rel. McGrath v. Holladay, 67 Mo. 64; Kilgore v. People, 76 Ill. 548, 552; and other cases cited under the title of "Compensation" in 15 C.J.S., and Words & Phrases, vol. 2. In view of this, we feel that to hold that said word as used in the title of Senate Bill No. 325, supra, excludes an allowance to the county commissioners for traveling expenses would be giving it an unreasonably strict interpretation and adopting a hypercritical view of the Legislature's grammatical efforts to defeat what appears to be its obvious purpose, to compensate or reimburse said commissioners for traveling expenses incurred. In our opinion, the words "a compensation," as used in the title of the act, is certainly a broad enough term to comprehend the money allowance granted in section 1 of its body, and, in view of its broadness, cannot be said to be misleading as a forecast of such an allowance.

Nor do we think that the use of the word "official" in said section as descriptive of the duties for whose accomplishment traveling expenses are allowed necessarily renders the act obnoxious to section 57, art. 5, of the Constitution. Undoubtedly, the expression "official duties" is frequently used to denote all of the duties that are required of officials by law. In such usage no distinction is drawn between duties that are "germane" to their offices and those that are not. In view of this fact and the liberal interpretation applicable to the wording of legislative enactments when their constitutionality is challenged, can we say with any degree of certainty that the term "official duties," as used in section 1 of the act in

question, is not cognate or referable to "extra and nongermane duties"? We think not. The latter expression, as used in the title of the act, evidently refers to duties imposed upon boards of county commissioners by legislative enactments of recent years that previously were not a part of their official duties nor "germane" to their offices. Since the creation of these additional duties by the Legislature, however, we see no reason why they should not be referred to with reasonable propriety and correctness as both "extra and nongermane duties" and "official duties," as is done in chapter 35, art. 20, supra. We think the most that can be said as to the use of the latter expression in section 1 of the act and the use of the former in its title is that same renders the constitutionality of said act doubtful under section 57, art. 5, supra. Therefore, in accord with the presumptions which must be indulged in the validity of a legislative enactment (see cases cited under Key-No. 48, title "Constitutional Law," vol. 4, Okla. Dig.) and our duty, where its title is questioned, to uphold it as constitutional unless the title is clearly insufficient (State ex rel. Ledbetter, Sheriff, v. Pitts, County Treas., 137 Okla. 59, 277 P. 918), we hold that chapter 35, art. 20, S. L. 1936-1937, sufficiently complies with section 57, article 5, of the Oklahoma Constitution, insofar as its constitutionality under said provision is herein questioned. Accordingly, the order of the Court of Tax Review denying the protest involved herein is hereby affirmed.

WELCH, C. J., and RILEY, OSBORN, and HURST, JJ., concur. CORN, V. C. J., and BAYLESS, GIBSON, and ARNOLD, JJ., dissent.